Thank you very much, Your Honors. Eric Schiffer, on behalf of the appellant, if I might reserve five minutes of my time for rebuttal. All right, watch the clock. I will, Your Honor. Thank you. Your Honor, I'm going to start my remarks by addressing the Court's question that was set forth in the order last week. And as I understand it, the Court wanted to know what preclusive effect would exist with regard to the bench trials judgment if the verdict was reinstated and the asserted marks were, in fact, validated. So I want to tackle that one head on. And I think in order to do so, we have to look at language from the Gracie case, which this Court decided some years back, which says that when the Court gives the jury the power to determine validity, the Court's duty is to give effect to the verdict. So the way I see this question is, if the verdict is going to be reinstated, how best would this Court give effect to that verdict? And I think we start, as the Court knows, there are asserted marks, marks that were actually tried during the jury trial, and then there are additional marks, marks that were – Before you go on, let me ask you a background question now. Were there – are these two separate cases? In other words, is one case tried to the jury and a separate case tried to Judge Carney? Well, it's one case – Or is it just all part of the same case? It was all part of the same case, Your Honor. The affirmative claims by Coivet was for trademark infringement arising from seven marks. Those became known as the asserted marks. There was a counterclaim by the defendant in the case to cancel and also to have a declaration of invalidity of those seven, in addition to nine additional marks that were not the subject of the claim. It's the counterclaims that were tried to the Court? That's correct. Well, in part. So taking it back a little bit, so the asserted marks were tried to the jury on the issue of infringement. The jury made a finding, most importantly for our purposes today, that the marks were valid. These are the plaintiff's marks? These are the asserted marks. They're all plaintiff's marks. They're all plaintiff's marks. These are seven of the 16 asserted marks. The marks that were originally in controversy on the plaintiff's complaint. Early on, more than just the seven were in controversy, but at the time of trial, the plaintiffs decided to only proceed on seven because it was undisputed that the defendants were only using those seven. I just wanted to make sure what the background setting was. Well, just to follow that, after the Court set aside the jury's verdict, the Court then granted summary judgment and canceled those very same seven marks and then set for bench trial, trial on the cancellation of the remaining nine marks which weren't the subject of the first trial. Now, if the Court set aside the verdict, well, that's on a JMOL, right? That's correct. The defendant brought a Rule 50 motion. The Court granted it, finding specifically that he did not believe there was evidence of suggestiveness. He thought that the asserted marks that were tried to the jury were merely descriptive and that there was a deficiency of secondary meaning, and because of that, he set aside the jury's verdict. So he just set aside without granting a new trial? That's correct. He then entered judgment for the other side? Not at that point because the counterclaims hadn't been fully resolved. Because of the counterclaim. Correct. There was a new trial motion. The Court denied that motion as moot. All right. All right. So taking me back to the question that the Court posed, if that jury's verdict is put back, what do we do, essentially? How do we give it effect? So I think the answer, when we were talking about preclusive effect in this situation, because there was no judgment, I don't believe res judicata would be the appropriate way to look at this. But I do believe collateral estoppel would apply in this situation. And I'm going to start with the asserted marks, the marks that were actually tried to the jury. Collateral estoppel bars relitigation of issues that were actually adjudicated in previous litigation between those same parties. And that's exactly what we have here. This Court has held in the Lubin case that even if there's not a final judgment, if the adjudication is sufficiently firm, which is a language that's used in Lubin, then the prior adjudication will be giving a finality of effect. And the factors to look at are whether or not the parties were fully heard, whether or not the prior decision was tentative, and whether or not the prior decision was subject to appeal. And I think if we look at the jury's verdict, I think it satisfies all of those to show that the adjudication, by way of the jury's finding on the special verdict, was sufficiently firm so that collateral estoppel can apply. So, Mr. Schiffer, this, if I get my terminology correct, under the restatement of judgments, this is the offensive use of collateral estoppel? In this instance, I believe it would be, Your Honor. Okay. Yes. So what happens to the marks that Judge Carney found were invalid? Well, he invalidated all of them. Right. So let's look first at the asserted marks, meaning the marks that were actually tried to the jury. I think there you have to look to see if there's the identical issue. And the judge pointed out in his memorandum of decision what he believed the fundamental issue of the underlying trial to be. And he said specifically at Excerpts of Record 7 that only the meaning of the word kot was at issue in the jury trial. That is how he identified the issue of that trial. So I believe that the issue, the identical issue, was already heard as to the asserted marks, the meaning of the word. The reason the judge granted summary judgment was because basically without calling it collateral estoppel, he cited during the final pretrial conference hearing, Supplemental Excerpts of Record 223, the judge says if the jury comes back to the plaintiff, our client, saying infringement, then the cancellation claims, at least with respect to the seven, you've lost. So without really calling it collateral estoppel, the judge admitted that if the jury found in favor of the plaintiff on the infringement case that the cancellation claims would necessarily have to be defeated. The problem is the judge reversed the jury's finding because the judge did not believe that the marks were suggestive. The judge believed they were descriptive and that there was insufficient evidence of secondary meaning. So for that reason, the judge granted summary judgment as to those seven marks. JMOL. Don't confuse it. No, JMOL first. Yes. But then after that, the judge did grant summary judgment as to those seven marks to cancel them. There was a separate motion for summary judgment. To keep the terminology straight, the asserted marks are the ones as to which you alleged infringement. The other marks, what do you call them? The additional marks. Additional marks. You have not alleged infringement yet. That's correct, Your Honor. And I apologize. We're trying to keep all of this straight. That's why they were not in the first trial. That's correct. But your argument is that both cases, both claims, turn on the use and the meaning of the word coat. That's correct. And from a collateral estoppel standpoint, that issue is identical. The parties are identical. And it's already been decided by the jury. And if we're going to give effect to that verdict, I think that finding has to be that the cancellation claims at a minimum as to the asserted marks have to be reversed. Then you have to then say what you should argue now is why the JMOL should not have been granted. Why, you know, get to the meaning of coat. I can do that, Your Honor. And if you like, I can come back as to why I believe collateral estoppel also applies to the marks that were tried during the bench trial. I can come back to that point. But to get to why we believe the judge incorrectly granted the Rule 50 motion, we have to look at the standards. The standards of review under Rule 50 motion is a de novo standard. And we have to look at and construe the evidence in the light most favorable to the nonmoving party, which is my client. And we have to look to see if there was any relevant evidence from which a reasonable person might have been able to make that finding. Your claim is that in the ruling he, quote, weighed the evidence, as I get it. That's your primary claim. Well, we believe so. And more importantly, the judge didn't look for the existence of substantial evidence. The judge evaluated the evidence he saw and found that it was unpersuasive to make the point. That's weighing the evidence. Correct, Your Honor. Okay. And I believe that's inappropriate on a Rule 50 motion. We have to look to see if there was evidence that might have supported the jury's verdict. And remember, the jury was finding validity in this portion of the case. And validity can be based upon suggestiveness or it can be based upon descriptiveness with secondary meaning. The special verdict form in this case did not require the jury to say which basis they were deciding it upon. So it could have been either one. The court doesn't know. The lawyers don't know. And this is a special verdict form that was not objected to. The jury was specifically instructed as to the various standards in the jury instructions. None of the jury instructions were objected to. So there was clear instruction. All of the arguments that were made in this briefing and to this court were identically made to the jury. So they had the full array of issues before them. They deliberated for two full days on this case before coming back with their verdict. And there's a reason for that. There was substantial evidence to support the finding of validity. First of all, you can look no further than the expert reports that the defendants themselves admitted into evidence. These were plaintiff's experts. We had a linguistic expert, Professor Tran, who had a huge report where he had 20 dictionary definitions of primary meanings of the word coat, which is the primary market issue here. That alone could suffice to support the jury's finding. That was something the defendants asked to be admitted into evidence. You also had testimony about the primary meaning of the word coat, which, again, the judge found not to be the principal issue in this case. You had Mr. Tuan Nguyen, who's our client, testify as to what he understood the word to believe, testify how he used the word as a pun because pho, which is the final product that this broth is used to make, is traditionally made from bones. And the word coat, without the head word nuoc, and I sincerely apologize for my Vietnamese pronunciations, without the head word, it means bones of the dead. That's one of the primary meanings. So there was a pun between the bones typically used to make the pho and bones of the dead as the name of the product. On that point, what other words could Vivi have used to name its product to convey to consumers what it was? I'm sorry, you mean the defendant? The defendant. Well, they could have called it soup. They could have called it broth. They could have called it anything. But calling it exactly what we're calling it, which we believe is a suggestive name, we believe constituted the infringement. And in addition to the factual recitations I've just given to you, the issues of incongruity were presented to the jury and briefed in this case, the issues of foreign equivalence. In other words, you look at the primary meaning of the word as you translate it, and it was undisputed that the primary meaning of the word coat is bones of the dead. It has other meanings, but the district court wrongly stated that if any of the other meanings are descriptive, then it can only be descriptive. There was no legal authority for that position. We believe that is an incorrect position under the law. We believe, especially under the doctrine of foreign equivalence, that you look at a primary meaning first and foremost. And when it's undisputed what the primary meaning is, that has to stand. And again, we're looking at what the jury might have considered here. All of this evidence was presented to them. Everything that I've just discussed, we believe, more than satisfied the standards of substantial evidence to support the jury's findings. As I said, the expert's report alone could satisfy that finding. So we believe the judge was incorrect when he granted the Rule 50 motion, and his stated reason for doing so is that he did not believe the marks were suggestive. In his opinion, after hearing the evidence, he thought the marks were descriptive. That is the reason he ordered the second trial. In fact, if we look at what the judge said in his ruling on the summary judgment motion, not the JOMO motion, but there was a subsequent motion for summary judgment, if you look at the excerpts of record at page 55, he says, any secondary meaning as to the additional quote marks, these are those other nine marks, may have acquired is an issue that was never brought before the jury. So his concern and the reason he wanted to have a second trial on those additional marks was because he didn't believe there was evidence of secondary meaning presented. But again, that's only one basis for validity. If we're looking at this from the Rule 50 standpoint, and we're looking at this from the jury instructions and from the special verdict form, any reason the jury came to its conclusion has to uphold that verdict. It's not just descriptiveness. It could also be suggestiveness. As long as there was substantial evidence that could have supported that finding, the jury verdict should not be disturbed, and especially here, after two full days of deliberation on all of these issues, that there may have been competing viewpoints on the evidence is natural and certainly expected, but it doesn't mean that the evidence wasn't there, and it doesn't mean that the evidence should have been weighed and especially not put in the light most favorable to our client, which we believe is exactly what the district judge did. Why did the district court hold a bench trial on the additional marks? From what I can glean from, and as I just cited to the summary judgment ruling on Excerpts of Record 55, he believed that the marks were only descriptive. And in his mind, if they're only descriptive, then you have to prove secondary meaning. He believed that the marks that were presented to the jury did not have a sufficient showing of secondary meaning. So he was not prepared to cancel the additional marks that were not tried to the jury unless our clients first had a chance to prove secondary meaning. So the whole premise of the second trial was to have our clients give the opportunity to show whether or not there was secondary meaning based upon his presumption of descriptiveness. Now getting back to the original point here, if we take that presumption of way, and if this jury verdict is reinstated, then there is no presumption of descriptiveness. The jury found valid marks, and it could have found them because they were descriptive with secondary meaning, or it could have found them because they were suggestive. We don't know. But what we do know is that in order to give effect to that finding, collateral estoppel should apply to both the asserted marks and the additional marks because it's the exact same issue that would be tried. There would be no need to have a second trial on the additional marks because the issue of what that means has already been decided by this jury. And I think that jury's verdict should be respected, and I think the court's judgment should be reversed in its entirety. I think this court would be well within its rights to reinstate the verdict, to order a new judgment in favor of Coq Viet Foods on the infringement claims, to find against VVF Foods on the cancellation claims. And the only issue that should be reserved for further proceedings at the trial court is damages. Now recall that the damages, the jury deadlocked on that issue, and the judge was prepared to try the case on damages. That's the only missing piece we have here. All right. So you wanted to reserve five minutes. Yes, Your Honor. I will reserve the remainder of my time. Thank you very much. Thank you. Thank you. Good morning. Mitch Tilner for appellee VB Foods. I'd like to start by addressing the issue framed in the court's recent order, because we have some disagreement with the appellant about that. And then I will explain why the JMO was perfectly sound and should be affirmed. Now the judgment in this case embraces three separate rulings, just to keep this straight, and I will try to keep the terminology straight. We had a jury trial. We had a verdict. The court then granted judgment as a matter of law, finding that the evidence presented at trial compelled a finding, the marks were descriptive, and lacked secondary meaning when VB Foods entered the market. That was judgment on the first seven marks. The court then heard a summary judgment motion in which we argued, Judge, you've invalidated the seven marks. You've got to cancel those. The other nine marks have the same term. Those should be canceled as well. So do you agree that if the JMOL should not have been granted and the jury verdict is reinstated, you cannot prevail on the additional marks? No, we disagree with that, Your Honor. The judgment on the additional marks is based on a two-day bench trial in which both sides presented evidence. The judge was sitting as fact finder on the additional nine. The key issue had to do with whether Coke was descriptive or suggestive or if it was descriptive, whether it acquired secondary meaning. That issue was presented in the bench trial. Wasn't that a key issue in the case? Well, the judge tried the issue of descriptiveness, suggestiveness again in the bench trial.  Okay, tried again. It was tried to the jury on the other marks. Is that right? The meaning of coat on the first seven marks was tried to the jury, correct. And then on summary judgment, we argued, Judge, you've invalidated it. It means the same thing in all 16 marks. The judge said, well, no, I'm going to try the other nine because the appellant  What he said is they haven't had a chance to put in evidence of secondary meaning, which they didn't necessarily have to do in front of the jury because that wasn't a special finding that the jury had to make in the first trial. That wasn't distinct in the special verdict form. That wasn't one of the questions the jury had to answer. That's correct. That's correct. So he tried the additional nine marks. He found them to be descriptive and without secondary meaning, and he therefore canceled them. So we have a judgment now that cancels 16 marks and that holds that the court recovers nothing on its complaint for infringement. Now, if this Court reverses the JMAL, the judgment on the nine marks will stand because those don't depend on the JMAL. Those were tried to the Court. So there's a cancellation of those nine. That's not affected by a reversal of the JMAL. What about collateral estoppel principles? Your Honor, collateral estoppel does not apply in a single case. Or is it law of the case? That's one of the reasons why we thought appropriate to send out this order. What is the appropriate conceptual framework to think about the subsequent effect of the jury verdict in this case? Your Honor, if the jury, if the JMAL is reversed and the verdict is reinstated, then the next step would be for this Court to remand the case so that we can get a ruling on our motion for new trial, which the judge mistakenly failed to adjudicate, finding I've granted JMAL, the new trial motion is moot. Well, if the JMAL is reversed, we have a pending new trial motion. We've made several arguments as to why the verdict was tainted by error and we're entitled to a complete new trial. So it's the basis of your new trial motion. We had several arguments, Your Honor. First, we argued the Court erroneously responded to a question that came from the jury during deliberations concerning when the jury had to assess validity of the marks. We also argued a great weight of the evidence point. We said the finding of infringement is against the weight of the evidence. We also argued that the judge, having ordered a partial new trial on damages because the jury was hung, we argued that would be unjust because you can't assess damages unless you determine when there was an infringement. So we argued for a complete new trial. But could you have included that in the special verdict form? Well, I'm not sure I understand. That particular question, the question of timing? Well, the verdict form did break down the damages before 2008, after 2008. There was evidence presented to the jury about when VV Foods began its use and its so we have VV Foods began its use on 11, 2002, and Crockbitt began it January 2002. Yes, Your Honor. The evidence, there was evidence as to when the parties came into the market, and that goes to the issue of secondary meaning, because the plaintiff had to prove secondary meaning at the time VV Foods entered the market. There was about a six-month window there between when POCV had entered and VV Foods entered. It's like a 10-month window. Well, the trademark registration certificates recite that they first used the mark in commerce on March 1, 2002, and VV Foods was in the market by no later than October. So that's about a six-month window. But let me now explain why the JMO was perfectly sound and should be affirmed. So the court doesn't need to reach these difficult res judicata collateral estoppel law of the case problems because the JMO should be affirmed. The entire judgment should be affirmed. Now, the evidence at trial, the judge didn't weigh the evidence. The evidence at trial compelled a finding that these marks are descriptive, and it was mostly plaintiff's evidence that did this. Plaintiff's evidence established the marks were descriptive. Our evidence corroborated that. For example, let's take a look at the labels. When the plaintiff started their company, the labels were in English. Chicken soup base. Beef soup base. That was the first label. Then they added a Vietnamese translation. Beef soup base became coat faux beau. Coat base, faux soup, faux beef. Chicken soup base became coat faux ga. Base, soup, chicken. Then in 2003, plaintiff's principal tries to register these Vietnamese marks. And by that point, BB Foods was already in the market. They're both in the market at this point. Plaintiff tells the trademark office, I'd like to register coat faux beau. They said, what does it mean? What's the translation? He said, coat means condensed or concentrated. Beau means soup. Beau means beef. So we have beef soup base. That's what he told the trademark office. Then we have, indeed, without, if coat doesn't mean base, you've got a label that says faux ga, faux beau. Without the word coat, they've got a picture of a soup on the label. The consumer will believe he or she is buying a can of soup. There's a picture of a bowl of soup on the label. Without the word coat, the consumer doesn't know what's in the can. Coat is the word for base, concentrated. It's not a soup. It's a solid paste. Mr. Tilner, is there any other word or phrase that means condensed or concentrated? You know, I believe the record shows that our clients had no other word to use. Now, so that's the word. And, in fact, we presented photographs of multiple products off the shelf in Vietnam, grocery stores in Vietnam, using the word coat on different types of products to mean condensed. And I invite the court to look at the photographs at four supplemental excerpts beginning at page 888. Now, it's interesting that, you know, they also sell a pickled radish product. They don't use the word coat on that one. Why not? Because it's not condensed. It's ready to eat. They sell teas. They sell tea products. They don't use the word coat. To me, all these things you're arguing, you probably argued to the jury, right? Your Honor, may I continue? There's much more. No, I realize that because I've read all this material, and it's all in your briefs, too. But this sounds like jury argument to me because there is obviously other evidence on the other side. Your Honor, I'm talking about evidence on their side, including their expert. Now, counsel cited their expert's report. Their expert talked about the multiple meanings of the word coat in the abstract, standing alone. Yes, if you open the dictionary, there are multiple definitions, just like in English. But when he was pressed and he was required to answer, you're looking at this label on this food product. What do you think that word means? What will the consumer think? He said, I think it's condensed. They probably used it to mean condensed. That's their expert. Question, is it your opinion that the plaintiff uses the word and intends that word to mean soup base? Answer, probably. He says the word coat goes with subchae, that's vegetarian soup. I think it's condensed. That's their evidence. That's their expert. Then their trademark attorney took the stand. He said when these marks were placed on the supplemental register in 2005, they were descriptive. That's their evidence. They were descriptive. And then our evidence simply collaborated. But the jury was free to find, even if it found they were descriptive, that they had acquired secondary meaning. They could have found that. They were instructed on that. Had there been evidence, yes, they were instructed on it. Had there been evidence of that, they could have found that. But the judge correctly decided there's no evidence that in this six-month window in 2002. What about the evidence that during that period, Kwak Viet spent $80,000 on advertising and served some 50,000 customers with branded products, and it was the only product with that name on the market at the time? We don't know where they were advertising. They were doing business in seven states. We don't know what their advertisements said. And for that to be probative or secondary. That's evidence. That's evidence. That's evidence counter to your evidence. Your Honor, that's not evidence of secondary meaning. That evidence simply means they advertised. But the cases say that advertisement alone does not establish secondary meaning. We need to know the impact of the advertisement. And the evidence of the impact was the survey, which the jury heard evidence of one survey. Ten years after these products hit the market, a survey was conducted. Vietnamese speakers, 85% of the people surveyed said, quote, Fobo. That's a common name. That's a common name. That's not a brand name. So there's evidence they advertised. There's evidence they gave product demonstrations in 2002. But there's no evidence that any of that generated in the customers' minds the notion that this is a trademark, that it signifies the source of the product. Mr. Tillman, my recollection is the principal that started VV Foods left Quoc Viet Foods sometime between February of 2002 and October of 2002. Is that the evidence? Yes, Your Honor. Okay. Yes. So the district court properly granted J-Mon their evidence, our evidence. It all pointed to the same conclusion. There was no evidence that it wasn't descriptive. Again, if it's not descriptive, the consumer has no clue what is in the can. And the photographs confirm that. So the seven marks were properly canceled. The nine marks were properly canceled because the judge heard the evidence on those marks at the bench trial. And if the court is inclined to reverse the J-Mon, then I would urge the court to remand, let the district court judge rule on our motion for new trial. The scope of the new trial can be part of that discussion. The judge is in the best position to decide that issue. And, again, the court's order of last week raised collateral estoppel. We haven't had a chance to brief it, but if the court would like, I did take a look at the cases in preparation to respond, and the cases confirm where you have a single case like this, you can't, there's no res judicata principle or collateral estoppel principle applicable. If the jury verdict is reinstated, you can't retry those issues that were tried there, even within the same case, unless you have a J-M-O-L. And if we reverse the J-M-O-L, that issue of the validity of the trademark cannot be retried. Well, that depends on whether the court grants the new trial motion, Your Honor. Yes, that would be another avenue. I'm not aware of the, I haven't looked at the new trial motion. Well, it hasn't been briefed on appeal because the court mistakenly viewed it as moot. But the fate of the seven marks that are the subject of the verdict will depend on whether the court grants the new trial motion and the outcome of the trial. Mr. Tellner, why didn't you bring a cross-appeal alleging error because Judge Carney didn't rule on your motion for a new trial? Your Honor, I believe there's authority saying that we do not need to cross-appeal from that. Rule 50C requires the court to make a conditional ruling when the court grants J-M-O-L, but I believe there's no requirement to cross-appeal. We're entitled to a ruling on that motion if the J-M-O-L is reversed. Maybe it doesn't fit under the rubric of collateral estoppel, but I think there are lots of cases that, you know, when there's a jury trial and a following court trial, court has to give deference to the jury, right? I think maybe it comes down to the right to jury trial. Otherwise, you're depriving the party of the right to jury trial. If the court, you know, in effect overrules the jury's verdict in a subsequent related proceeding. I understand. So the same principle would apply here, except, as you say, Judge Carney grants your motion for a new trial, and it's tried again, and you prevail. But if you lose, you're still bound by the verdict, right? On the subsequent court trial. Your Honor, it's premature to be sure, because as you pointed out, if Judge Carney grants a new trial and we prevail, this issue never arises. Yes. If he grants a new trial and we lose in the new trial and the jury says the seven marks are valid, then the issue will arise. Is that binding on the judge who heard a different trial, who heard different evidence on the other nine marks? Well, if we reinstate the jury verdict at a minimum, we have to vacate the other judgments. I don't. Even if you can still, you're still free to renew your new trial motion, because it's no longer moot. Your Honor, I don't believe you would vacate the part of the judgment dealing with the nine additional marks, because those marks are pristine, unrelated to the J. Mull. There was a separate trial before the court. This case really got procedurally screwed up, to use a term of art. It is unusual, but I think when you parse it, you can see what happened. There's an independent bench trial on the nine marks. Those were our counterclaims for cancellation. Tried over two days, judge issues a detailed memorandum of decision, cancels the nine marks. The J. Mull is unrelated to that trial. So if you vacate or reverse the J. Mull, there's no reason to disturb that. Let Judge Carney later decide, do I need to do something with that if a verdict comes in on the new trial that creates some tension? That would be for the judge to decide. All right. Thank you very much. Thank you, counsel. Thank you, Your Honors. I have two points I want to address. I'm going to start with one of the points that I was about to get to before I stopped talking before, and that was what Judge Wurlau, what you referenced, that I believe principles of law of the case would govern in this situation. The way I look at this is you had a snowball starting with the jury verdict that the judge then reversed on the J. Mull, and it just kind of started rolling downhill and kind of picked up speed and different trials happened and different findings happened. And I think if that snowball is put back up, I think all of those other things have to be undone. And I believe law of the case would govern here because it prohibits a court from considering an issue that's already been decided by a higher court in the same case. That's the Hall v. City of Los Angeles case, Ninth Circuit 697 F3rd 1059. If we reinstate the jury's verdict as to validity because substantial evidence supported it, that would be the law of the case as to the meaning of cut and the issue of validity. And that would have to be applied to any subsequent ruling. I think all of the other findings by the judge would have to be reversed, and that would then sit as law of the case. And I do believe collateral estoppel would also apply in this situation because you have the actual issue already litigated. But again, as Your Honor artfully put it, it's a big procedural mess. One thing that is clear, though, and I want to address this, the point about the motion for new trial. There's a case that was cited in their brief. This is sort of a little tangential point they raised in their brief, and they're actually incorrect. They say the district court didn't rule on the motion for new trial. That's not true. At excerpts of Record 77, there's a footnote where the judge denies the motion for new trial as moot. So the judge did make a finding, and the judge did rule upon it. Whether or not that suffices for what Rule 50C requires as to the findings of the basis for denying it is a different issue. But there was a denial. And as Judge Pratt noted, there also was no appeal from that. And I believe that was an appealable order, and I believe that should have been part of their cross appeal, which, by the way, they did bring a cross appeal in this case, whether or not they had to. And I believe there's a waiver issue there on the new trial issue that should be considered. What was their cross appeal on? The cross appeal was solely on attorney's fees. They brought a motion for attorney's fees, claiming that this was an exceptional case that should have entitled them to attorney's fees. But they raised no other issues. And there's a reason you won't find the new – your Honor asked where the new trial motion is. There's a reason you won't find it, because it's nowhere in the supplemental excerpts. They didn't include it. They didn't appeal from it. So our position would be they waived it, and, oh, by the way, the judge did rule on it. The judge did deny it. So I think there's nothing further to be done on that issue if the case is remanded. I think the only thing that needs to be done is have the snowball put back in place, have the jury verdict reversed, or the JMO reversed, the jury verdict reinstated, and law of the case collateral estoppel should govern the meaning of the word cote, because the jury spent two days deliberating that. All the evidence that counsel presented to you just now basically bore upon secondary meaning. All of that was presented to the jury, in addition to a whole lot of other evidence that was presented over three days. The jury had all of that to consider. The jury was perfectly well instructed. Excerpts of record 1550 to – I'm sorry, 515 to 530 show the jury instructions where all of those standards were clearly laid out. The verdict form, excerpts of record 569 to 570, shows the questions that were specifically put to them. The very first question, are the marks valid? The very first answer, yes, they are. I think that has to be given effect. I think the JMO should be reversed. I think everything that flows from the granting of the JMO should be reversed. The only issue to be taken up by the district court should be damages. Reversed or vacated? Well, vacated. The order on the JMO should be reversed. The judgment should be reversed. And the only issue to be taken up should be damages on the deadlocked jury issue. That's the only remaining piece of the puzzle that the district court should have to consider. And if there's no other questions, Your Honor, with that, I will see you. Mr. Schiffer, I didn't – I haven't gone to page 77 that you referred to, but Mr. Tilner's allegations of juror error – of judge error in responding to the jury, his other legal arguments, were they addressed at 77 in the denial of the motion for you? They were not, Your Honor. And again, when we look at the motion for a new trial, there has to be a finding that there would be a miscarriage of justice, and there's nothing in that motion, which, by the way, is not before this court, which would suggest that there would be a miscarriage of justice in the way the judge answered a jury question or in upholding a finding of infringement that a jury made after two days of deliberations. With that, Your Honor, we will submit. All right. Thank you, counsel. CWOC Viet Foods v. VB Foods is submitted and will take up Hope Road Merchandising v. Jammin' Java.
judges: Tashima, Wardlaw, Pratt